UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE RODRIGUEZ, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 16-cv-11113-ADB |
| MASSACHUSETTS PAROLE BOARD, ET AL., | * |
| Defendants. | * |

# MEMORANDUM AND ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND TO DISMISS

BURROUGHS, D.J.

Plaintiff Jose Rodriguez, proceeding *pro se,* filed this lawsuit pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of Massachusetts law and the federal constitution. Rodriguez seeks declaratory and injunctive relief against the Massachusetts Parole Board ("Parole Board") and three groups of defendants: the "Parole Board defendants," who are past or current Parole Board members (Josh Wall, Cesar Archilla, Charlene Bonner, Sheila Dupre, Tonomey Coleman, Lucy Soto-Abbe, and Ina Howard-Hogan); the "DOC defendants," who are current employees of the Massachusetts Department of Corrections (Thomas A. Turco III and Richard Pizzuto); and the "District Attorney defendants" (Norfolk County District Attorney Michael Morrissey and Assistant District Attorney Marguerite Grant).

On July 19, 2016, the Court dismissed all counts against the Parole Board as a state agency but allowed the counts against the individual defendants to proceed. [ECF No. 14]. Now before the Court are three motions: 1) Rodriguez's motion for a temporary restraining order (TRO) and preliminary injunction [ECF No. 10], which the Parole Board and District Attorney

defendants oppose [ECF No. 42]; 2) the Parole Board and District Attorney defendants' motion to dismiss [ECF No. 41], which Rodriguez opposes [ECF No. 52]; and 3) the DOC defendants' motion to dismiss [ECF No. 55], which Rodriguez also opposes [ECF No. 66]. For the reasons stated below, this Court hereby GRANTS the motions to dismiss submitted by the DOC, Parole Board, and District Attorney defendants, and DENIES Rodriguez's motion for a TRO or preliminary injunction.

I.  BACKGROUND

Rodriguez is a Massachusetts state prisoner serving a life sentence with the possibility of parole following convictions in the late 1970's. [ECF No. 20 (hereinafter the "Complaint") at ¶¶ 1b, 16]. On July 16, 2013, he had his third parole hearing in front of the Parole Board. Id. at 18. At that hearing, two of the Parole Board defendants, Defendant Bonner and Defendant Wall, allegedly examined Rodriguez's Criminal Offender Record Information (CORI) report including sealed juvenile records. Id. at ¶¶ 19–21. ADA Grant, who was present at the Parole Board hearing, also allegedly provided CORI and juvenile records to the Parole Board. Id. at ¶ 1e. The Parole Board, partially relying on this information, refused to parole Rodriguez. Id. at ¶ 29. The allegations that CORI and juvenile offender records were relied upon in denying Rodriguez parole form the basis for the counts in the amended complaint against the Parole Board defendants, id. at Counts 1–9, 14, 17, and for some of the counts against the District Attorney defendants, id. at Counts 14, 16.

Rodriguez also alleges that the DOC defendants have kept him at custody levels (i.e. minimum, medium, and maximum security) higher than the one warranted by his situation through the use of a "Class C Non-Discretionary Override," which overrides his objective classification score. Id. at ¶¶ 38–40; see also 103 Mass. Code Regs. 420.06 (definitions of "non-

discretionary override" and "objective classification system"). Rodriguez asserts that the Parole Board's refusal to grant him parole blocks his ability to obtain a lower security designation in prison. Compl. at ¶¶ 47–49, 59. According to Rodriguez, the DOC defendants violated their own rules and regulations by keeping him at a high security facility, and, further, the regulations pertaining to Class C Non-Discretionary Overrides are unconstitutional. Id. at ¶¶ 60–61. These claims form the basis for the counts against the DOC defendants. Id. at Counts 10, 11, 13, 14.

Rodriguez next claims that District Attorney Defendant Morrissey entered into an unlawful agreement with the DOC defendants to keep Rodriguez in a higher security setting, id. at ¶¶ 61–62, and that the District Attorney defendants used the Parole Board's decision denying parole as an exhibit to their opposition to Rodriguez's motion for a new trial in the Norfolk Superior Court, id. at ¶¶ 50, 65, in violation of the state and federal constitutions. Id. at ¶¶ 65–66. These facts form the basis for the remaining counts against the District Attorney defendants. Id. at Counts 12, 15.

## II.     MOTIONS TO DISMISS

All defendants named in the pending complaint have filed motions to dismiss pursuant to either Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) or Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim upon which relief may be granted).

### a. Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Assessing the plausibility of a claim is a two-step process. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." Rodriguez-

3

Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Along with all well-pleaded facts, the Court must draw all logical inferences from a complaint in favor of the plaintiff. Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Rodriguez-Reyes, 711 F.3d at 53 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

"When considering a motion to dismiss under subsection 12(b)(1) of the Federal Rules of Civil Procedure, the Court should apply a standard of review 'similar to that accorded a dismissal for failure to state a claim' under subsection 12(b)(6)." Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). A motion to dismiss pursuant to Rule 12(b)(1) is the usual vehicle for dismissal under the Eleventh Amendment. Sepulveda v. UMass Corr. Health Care, 160 F. Supp. 3d 371, 383 (D. Mass. 2016).

### b. Claims Under the Federal Constitution

#### i. Fourth, Fifth, and Sixth Amendment Claims

Rodriguez alleges that both the Parole Board and the District Attorney defendants violated the Fourth Amendment. Compl. at Counts 2, 3, 6, 7, 8, 9, 15, 16, 17. It is not apparent what conduct Rodriguez believes constitutes a violation of his Fourth Amendment rights, since he does not allege that the defendants searched his person, house, papers, or effects. Thus, the Court cannot conclude that he has successfully alleged a plausible claim for relief on the basis of a Fourth Amendment violation.

Rodriguez also claims that the Parole Board and District Attorney defendants violated his Fifth Amendment rights. Compl. at Counts 2, 3, 6, 7, 8, 9, 15, 16, 17. Although it is not clear

4

how the Fifth Amendment applies to all of the counts in which it is referenced, Rodriguez does allege that, during his parole hearing, the Parole Board required him to answer questions about juvenile cases in which he was found guilty or acquitted. Compl. at ¶¶ 1c, 67. This allegation seems to invoke the Fifth Amendment privilege against self-incrimination. See U.S. Const. amend. V; United States v. Doe, 465 U.S. 605, 610 (1984) (the Fifth Amendment protects individuals from "compelled self-incrimination" (emphasis omitted)). However, "the [Fifth Amendment's] Double Jeopardy Clause 'shields a defendant from a second prosecution for the same offense after either conviction or acquittal.'" United States v. Fernandez, 722 F.3d 1, 36 (1st Cir. 2013) (quoting United States v. Morris, 99 F.3d 476, 478 (1st Cir. 1996)). Because of this, any answers Rodriguez might have given about cases in which he has been found guilty or acquitted could not have been used to incriminate him in violation of the Fifth Amendment, since a subsequent prosecution would not have been possible. See United States v. Johnson, 488 F.2d 1206, 1209 (1st Cir. 1973) (conviction extinguishes a defendant's privilege to refuse to testify about the crime). Further, because denial of parole is not punishment for Double Jeopardy purposes, the Parole Board could lawfully rely on Rodriguez's prior cases without running afoul of the Double Jeopardy Clause's prohibition against successive punishments for the same crime. See Bartlett v. Mass. Parole Bd., No. 13-cv-11479-WGY, 2013 WL 3766747, at *7 (D. Mass. July 15, 2013) ("[Bartlett] was not placed in double jeopardy since the denial of parole is neither the increase nor imposition of a sentence."); Alessi v. Quinlan, 711 F.2d 497, 501 (2d Cir. 1983) (same). To the extent Rodriguez believes he suffered any other violations of his Fifth Amendment rights, the Court cannot discern from the complaint what those violations would be.

Rodriguez also claims that the District Attorney defendants violated his Sixth Amendment rights by using the Parole Board's denial of parole in their opposition to his motion

for a new trial. Compl. at Count 15. Aside from his bare assertion that the District Attorney defendants violated the Sixth Amendment, Rodriguez does not explain how they did so, nor can the Court infer how Rodriguez believes his rights were violated. Therefore, Rodriguez has failed to state a claim under the Sixth Amendment.

### ii. Eighth Amendment Claims

Rodriguez alleges that all defendants violated his Eighth Amendment rights in various ways. Compl. at Counts 2, 3, 6–17. With regard to the Parole Board and District Attorney defendants, Rodriguez alleges they worked in concert to deny him parole, thus inflicting cruel and unusual punishment. Id. at ¶ 64. Rodriguez also argues that he has a constitutional right to a "meaningful opportunity to obtain release," id. at ¶ 47, and that the Parole Board's refusal to parole him violates that right. Id. at ¶¶ 31–32, 35.

Denial of parole within a statutory scheme that gives the Parole Board discretion to grant or deny parole does not qualify as cruel and unusual punishment. Bartlett, 2013 WL 3766747, at *7; see also Lustgarden v. Gunter, 966 F.2d 552, 555 (10th Cir. 1992) ("Denial of parole under a statute dictating discretion in a parole determination does not constitute cruel and unusual punishment."); Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 933 (11th Cir. 1986) (denial of parole is "merely a disappointment rather than a punishment of cruel and unusual proportions"). Thus, Rodriguez cannot base his Eighth Amendment claims upon the discretionary denial of parole.

Rodriguez also cannot base his Eighth Amendment claims on the alleged denial of his right to a "meaningful opportunity to obtain release." Rodriguez quotes this phrase from Graham v. Florida, 560 U.S. 48, 75 (2010), which held that, in non-homicide cases, juvenile defendants cannot be sentenced to life in prison without the possibility of parole, but rather must be afforded

"some meaningful opportunity to obtain release." Graham does not apply here because Rodriguez is serving a sentence of life in prison *with* the possibility of parole, Compl. at ¶ 16, while Graham only applies to juvenile offenders serving sentences of life in prison *without* the possibility of parole. Graham, 560 U.S. at 75. In fact, Rodriguez has received three parole hearings to date. Compl. at ¶ 18. While Rodriguez attacks the validity of the third hearing, he does not question the validity of the first two hearings. Although a state must provide "some meaningful opportunity to obtain release," it "is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime." Graham, 560 U.S. at 75. The fact that Rodriguez has not been released does not mean he has not had meaningful opportunities to obtain release.

Rodriguez also alleges that the DOC defendants are violating his Eighth Amendment rights by not lowering his custody status so that he has access to minimum security and pre-release prisons. Id. at ¶ 61. Rodriguez claims that this is due to the use of a "non-discretionary Class C override" of his objective classification score, which keeps him at medium security. Id. at ¶ 39; see also 103 Mass. Code Regs. 420.06 (definitions of "non-discretionary override" and "objective classification system"). The DOC has the authority to classify and place prisoners in its custody as it deems fit. See Mass. Gen. Laws ch. 124, §1(f)-(g) (Commissioner of Correction has power to classify inmates); ch. 127, § 20 (mandatory initial classification of inmates); ch. 127, § 97 (Commissioner may transfer inmates). There is no right to a specific custody status. See Brooker v. Warden, No. 98-466-JD, 1999 WL 813893, at *6 (D.N.H. June 22, 1999). The Massachusetts Supreme Judicial Court ("SJC") recently decided that the DOC "must individually consider each [juvenile offender] inmate's suitability for classification in minimum security and provide a written explanation for its decision," and also barred the DOC from using

7

override codes to determine custody statuses for juvenile offenders. Deal v. Comm'r of Corr., 56 N.E.3d 800, 810 (Mass. 2016). The SJC also made it clear, however, that no constitutional violation arises if the DOC does use override codes or does not individually consider a juvenile offender's suitability for minimum security placement. Id. at 812–13. This is consistent with federal court opinions holding that an Eighth Amendment claim based on custody status is not cognizable. See id.; Brooker, 1999 WL 813893, at *6; Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (holding that there is "no federal constitutional right to a particular custody status"); Saunders v. Watson, No. 88-519-JRR, 1990 U.S. Dist. Lexis 20249, at *11 (D. Del. Jan. 25, 1990) ("The fact that petitioner is administratively classified to a status accorded fewer privileges than those accorded the general prison population . . . does not give rise to a cause of action under the Eighth Amendment.")

### iii. Fourteenth Amendment Claims

Rodriguez alleges that all three groups of defendants have violated the Fourteenth Amendment. Compl. at Counts 2–4, 6–17. In Count 13, Rodriguez alleges that the DOC segregates juvenile sex offender inmates (such as himself) into the highest custody status in Massachusetts prisons in violation of the Fourteenth Amendment's Equal Protection Clause, but otherwise does not explain how he believes that the other defendants violated the Fourteenth Amendment.

The Equal Protection Clause allows a state to discriminate between groups of people "if the classification drawn by the [challenged state action] is rationally related to a legitimate state interest," City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985), although classifications infringing on a fundamental right or affecting a "suspect class" of people will trigger more intense scrutiny of governmental action, see San Antonio Indep. Sch. Dist. v.

Rodriguez, 411 U.S. 1, 40 (1973). Because "juvenile sex offenders are not in a suspect or quasi-suspect class," Doe v. Weld, 954 F. Supp. 425, 436 (D. Mass. 1996), the DOC need only have a "rational basis" for placing juvenile sex offenders into higher custody statuses. The DOC Defendants note that all prisoners facing civil commitment, not just juvenile sex offenders, are placed in higher security facilities because of their heightened flight risk. [ECF No. 56 at 6–7]. Rodriguez has not addressed this, nor has he pleaded any facts to show that the DOC's decisions are not rationally related to a legitimate state interest.

The rationale for Rodriguez's remaining Fourteenth Amendment claims is not apparent. Rodriguez may be asserting that his due process rights were violated. To succeed on a procedural due process claim, Rodriguez must plead that a state actor infringed upon a constitutionally protected liberty interest without affording him due process. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Rodriguez does not identify such a liberty interest, nor does he explain why any process the state offered was constitutionally deficient. To the extent that Rodriguez claims a liberty interest in obtaining parole, such an interest does not exist under the Massachusetts statutes governing parole. Lynch v. Hubbard, 47 F. Supp. 2d 125, 127–28 (D. Mass. 1999); see also Jimenez v. Conrad, 678 F.3d 44, 46 (1st Cir. 2012).

Rodriguez could also be attempting to raise a substantive due process claim. "To establish a substantive due process claim, a plaintiff must demonstrate an 'abuse of government power that shocks the conscience' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.'" Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001) (quoting PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 31–32 (1st Cir. 1991)). Rodriguez has shown neither in his amended complaint, as he does not plead any facts sufficient to show a shocking abuse of governmental power, or that a governmental action was unrelated to any

legitimate state interest. This is especially true with regard to the Parole Board defendants because "there is nothing arbitrary, shocking, or even outside the scope of reasonable judgment . . . in allowing a parole board wide enough discretion to reflect the specific interests of law enforcement." Jimenez, 678 F.3d at 47 (internal citation omitted). There is also no substantive due process right to privacy in one's criminal record. Vega-Rodriguez v. P.R. Tel. Co., 110 F.3d 174, 183 (1st Cir. 1997); see also Paul v. Davis, 424 U.S. 693, 713 (1976) (constitutional right to privacy does not bar publication of arrest record). The rules concerning CORI reports are created by Massachusetts statute, and a violation of that statute, if it occurred, does not necessarily constitute a violation of the Constitution. Corbin v. Chitwood, 145 F. Supp. 2d 92, 97 (D. Me. 2001) ("release of [criminal record information], even if a statutory violation, simply does not rise to the level of a constitutional violation").

### c. State Law Claims

Rodriguez alleges numerous violations of the following Massachusetts laws: 120 Mass. Code Regs. 500.01 (CORI regulations); Mass. Gen. Laws ch. 119, § 60-60A (limited publicity and admissibility for juvenile records); ch. 119, § 72B (procedure for when a juvenile commits murder between the ages of 14 and 18); ch. 127, § 32 (DOC "shall treat the prisoners with the kindness which their obedience, industry and good conduct merit"); and Articles 12, 14, and 26 of the Massachusetts Declaration of Rights (rights of the accused in criminal cases). See Compl. at Counts 1–3, 6–17.

These claims center on the use of Rodriguez's CORI report before the Parole Board. Massachusetts law allows all "[c]riminal justice agencies" to obtain CORI records, "including sealed records." Mass. Gen. Laws ch. 6, § 172(1). The Parole Board fits well within the definition of "criminal justice agency." See 803 Mass. Code Regs. 2.02. The Parole Board's regulations allow it to use CORI forms, and the SJC has endorsed this practice. See id. (giving

definition of "criminal justice agency"); Diatchenko v. Dist. Att'y for the Suffolk Dist., 27 N.E.3d 349, 359 (Mass. 2014). CORI reports may not be disseminated to non-CORI certified persons, however, absent a subpoena or court order. 120 Mass. Code Regs. 500.02(3). Ordinarily, Parole Board hearings are not public, but prisoners like Rodriguez who are serving life sentences do receive public hearings. 120 Mass. Code Regs. 300.02(2). Whether any non-CORI certified members of the public were present at Rodriguez's July 16, 2013 hearing is not clear from the pleadings.

Nonetheless, despite any merit these claims many have, they are barred in this Court by the Eleventh Amendment. Under the Eleventh Amendment, federal courts cannot grant relief against states based upon violations of state law. Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 106 (1984). The Eleventh Amendment protects states from federal judicial intervention, and "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Id. at 106. To the extent it is available, Rodriguez must seek relief on these claims in state court. Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992). Since this Court lacks subject matter jurisdiction and therefore cannot grant relief on these claims, all of Rodriguez's state law claims are dismissed without prejudice.

### III. MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Rodriguez seeks to enjoin the Parole Board and District Attorney defendants from: i) disseminating his CORI report; ii) disseminating his sealed not-guilty juvenile adjudications; iii) disseminating his juvenile record information; and iv) using information from the 2013 parole hearing and the 2014 decision denying parole in its opposition to Rodriguez's motion for a new trial in Norfolk Superior Court. [ECF No. 10 at 1]. Both sets of defendants oppose this motion,

arguing that they cannot be enjoined under 42 U.S.C. § 1983 as well as sovereign immunity, and further, that Rodriguez has not met the standard for obtaining a TRO or preliminary injunction in any event. [ECF No. 42].

"In determining whether to issue a TRO or preliminary injunction, the Court examines the same four factors." Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Local Lodge No. 1821 v. Verso Paper Corp., 80 F. Supp. 3d 247, 277–78 (D. Me. 2015). To succeed, the movant must establish the following four factors: (i) a likelihood of success on the merits; (ii) that he will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties favors an injunction; and (iv) that an injunction is not contrary to the public interest. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). "Likelihood of success is the main bearing wall of the four-factor framework." Id. at 10 (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)).

Even if the defendants here could be enjoined by a federal court, Rodriguez cannot show a likelihood of success on the merits, as all of the motions to dismiss have been granted for failure to state a claim. "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). Thus, the Court has no need to evaluate the remaining TRO/PI factors before concluding that Rodriguez cannot satisfy his burden.

## IV. CONCLUSION

Accordingly, the Court hereby GRANTS the Parole Board and District Attorney defendants' motion to dismiss [ECF No. 41], GRANTS the DOC defendants' motion to dismiss

[ECF No. 55], and <u>DENIES</u> Rodriguez's motion for a TRO or preliminary injunction [ECF No. 10]. All state law claims against all defendants are dismissed without prejudice.

    **SO ORDERED.**

February 22, 2017                                                            <u>/s/ Allison D. Burroughs</u>
                                                                                        ALLISON D. BURROUGHS
                                                                                        U.S. DISTRICT JUDGE